Ellsworth P. TAYLOR, Appellant,

v.

UNITED STATES of America, Appellee.

No. 13306.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1956.

Decided Oct. 25, 1956.

---

Mr. Carl W. Berueffy, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll, Harold H. Titus, Jr., and E. Tillman Stirling, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant was convicted of the crimes of housebreaking and robbery,[1] and appeals urging three grounds for reversal: (1) the statute of limitations; (2) violation of the constitutional guarantee of speedy trial; and (3) failure of the trial court to direct a verdict of not guilty.

The offenses for which appellant was indicted and convicted were committed on July 19, 1950. The indictment was not returned until February 23, 1954, more than three years after the commission of the offenses. However, the record shows that in November 1950 appellant was sentenced to serve five to seven and one-half years in prison in New York State and remained in the penitentiary of that state until, on petition of the Government filed on February 6, 1956, a writ of habeas corpus *ad prosequendum* was issued by the United States District Court for the District of Columbia. He was then returned to the District of Columbia, arraigned February 17, 1956, and convicted at the trial, which commenced March 28, 1956.

The pertinent sections of the United States Code relating to the statute of limitations are quoted in the margin.[2]

The contention of appellant that he is entitled to the protection of the statute of limitations is foreclosed by Green v. United States, 1951, 88 U.S. App.D.C. 249, 188 F.2d 48, and McGowen v. United States, 1939, 70 App.D.C. 268, 105 F.2d 791.

Appellant says, however, that his right to a speedy trial as guaranteed by the Sixth Amendment has been violated and, under the circumstances of this particular case, we agree. The evidence against appellant was, to say the least, weak;[3] and, while it is not necessary, as

1. D.C.Code §§ 22–1801, 22–2901 (1951).

2. 18 U.S.C. § 3282: "*Offenses not capital.* Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed. June 25, 1948, c. 645 [§ 1] 62 Stat. 828."
 18 U.S.C. § 3290: "*Fugitives from justice.* No statute of limitations shall extend to any person fleeing from justice. June 25, 1948, c. 645 [§ 1] 62 Stat. 829."
 It is to be noted that the period of limitations has been increased, effective in 1954, to five years but this, it is agreed, does not affect offenses committed prior to the amendment.

3. The evidence was that the housebreaking and robbery did take place; however, the victim did not see the perpetrator of the crimes. The only evidence connecting appellant with the crimes was the testimony of two witnesses. The first was an elevator operator in the apartment building where the crimes took place. This witness's testimony indicates that she had only seen appellant in person on the day of the crimes (six years before the trial) and at the trial; and that, on the day after the offenses were committed, she had identified a picture of the appellant as the man she had seen in the apartment building on the day of the crimes.

hereinafter stated, that we pass upon the question as to whether the evidence or lack of it entitled him to a directed verdict of not guilty, we believe that the long delay in the return of the indictment, the long delay between indictment and trial, the failure of the record to disclose that appellant even knew that he was under indictment, and his long absence from the District of Columbia, certainly prevented him or his attorney from preparing a proper defense.

The Government urges that the delay in bringing appellant to trial was his fault, since it was caused by his imprisonment in New York. We think his imprisonment there does not excuse the Government's long delay in bringing him to trial here, in the absence of a showing that the Government, at a reasonably early date, sought and was unable to obtain his return for trial. It does not appear that the Government made any such effort before its successful effort in 1956, though the crime was committed in 1950 and the indictment returned in 1954. In Ponzi v. Fessenden, 258 U.S. 254, 42 S. Ct. 309, 66 L.Ed. 607, a defendant, during his imprisonment under a federal sentence, was produced for trial in a Massachusetts court. In sustaining the right of Massachusetts to try him, the Supreme Court referred to the "comity between the state and national government in reference to the enforcement of the laws of each" and said: "The authorities, except when special statutes make an exception, are all agreed that the fact that a defendant in an indictment is in prison serving a sentence for another crime gives him no immunity from the second prosecution." 258 U.S. at pages 263–264, 42 S.Ct. at page 312.

■ It is also contended by the Government that the right to a speedy trial is waived by the acquiescence of the accused in the delay, that is, acquiescence through failure to make demand for a speedy trial, to which he is entitled; and, indeed, the authorities indicate that this is correct.[4]

In this case, however, as stated, there is no showing that appellant even knew he was indicted and entitled to a trial. Indeed, the most that can be said is that his knowledge that he was accused of the crimes was gained through an interview with a detective from the District of Columbia who claims to have obtained a confession from the appellant in 1951. Although this interview took place in 1951, no indictment was in fact returned until 1954; and there is no showing that appellant knew he had been indicted until the writ of habeas corpus *ad prosequendum* was executed in 1956.

■ There is to be borne in mind the admonition of the Supreme Court that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights" and that "we 'do not presume acquiescence in the loss of fundamental rights.' " Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.

Whatever may be the limitations on the right to a speedy trial by way of waiver, certainly in this case the right was not waived, due to the incarceration of appellant, his apparent lack of knowl-

---

The second witness, a detective on the District of Columbia police force, testified that in an interview with appellant at Clinton Prison in New York on April 11, 1951, appellant had confessed orally to having committed the crimes. This witness admitted that no one except the appellant and himself was present at the time of the alleged confession, that he took no notes concerning the interview, and that appellant had refused to make any written statement. At the trial appellant admitted the fact of an interview but denied having made a confession, and denied any connection with the crimes.

4. See e.g., Pietch v. United States, 10 Cir., 1940, 110 F.2d 817; Chinn v. United States, 4 Cir., 1955, 228 F.2d 151. In the latter case the court added: "Nor can we find here any arbitrary, oppressive or vexatious delay which was prejudicial to Chinn's rights." 228 F.2d at page 153.

**262**

edge that he had been indicted and his consequent inability to insist on the right to a speedy trial. Nor can it be said that the lack of a speedy trial did not harm appellant, for the possibility of serious prejudice existed here under circumstances disclosing a "weak" case. Had the evidence been *overwhelming, so* that no infirmity might be made to appear, a different result might be reached. Berger v. United States, 1935, 295 U.S. 78, 88–89, 55 S.Ct. 629, 79 L.Ed. 1314. The long lapse of time between the commission of the offenses and the trial, the incarceration of appellant throughout the entire interim, and the resulting handicap to the procurement of witnesses who might have supported appellant's alibi, or any other defense, must seriously have handicapped the preparation of a defense. This harm could have been avoided by an earlier indictment and notice to appellant that he had been indicted. Upon such notice, appellant or his counsel could have made "an affirmative request or demand for trial," [5] and appellant, his friends and counsel could have proceeded to an investigation before the trail became cold. For these reasons we cannot agree that appellant waived his right to a speedy trial as assured by the Sixth Amendment.

We do not rely on the mere lapse of time between the commission of the offenses and the date of indictment, considered by itself, for that is governed by the statute of limitations. It is the combination of the factors set forth above which motivates our decision. We do not wish to be understood to do other than apply the rule stated to the facts and circumstances of this particular case.

In view of the disposition made of this phase of the case, it is not necessary that we pass upon the claim of the appellant that he was entitled to a verdict of not guilty as a matter of law.

Reversed, with directions to vacate the judgment of conviction and to dismiss the indictment.

---

5. Pietch v. United States, note 4 supra.